IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, | § § § § § | Case 1:17-1221 |
| Plaintiff | § § | |
| vs. | § § § | JURY REQUESTED |
| SOUTHWESTERN BELL TELEPHONE COMPANY, AT&T SERVICES, INC., and DIRECTV, LLC, collectively a/k/a AT&T SOUTHWEST, | § § § § § § § | |
| Defendant | § | |

## COMPLAINT

Comes now the Communications Workers of America, AFL-CIO, Plaintiff herein, by and through counsel, and complains of Southwestern Bell Telephone Company, AT&T Services, Inc. and DIRECTV, LLC, collectively a/k/a AT&T Southwest, Defendant, as follows:

A.   Introduction

1.   This is an action brought by a labor union under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. §185, against an employer over the employer instituting an unprecedented massive layoff of employees represented by the union while at the same time massively subcontracting work that the employees are trained and qualified to perform, for the bad faith purpose of diminishing the employee bargaining unit for which the union serves as

exclusive representative in willful, bad faith breach of a contractual promise to deal with the union with respect, fairness, and good faith.

### B.   Parties

2.   Plaintiff Communications Workers of America, AFL-CIO ("CWA" or "Union") is a labor union that does business in this judicial district and represents employees in this judicial district who are employed by an employer engaged in commerce within the meaning of 29 U.S.C. §185, and that has the standing and capacity to bring this action.

3.   Defendant is a business entity collectively comprising Southwestern Bell Telephone Company, AT&T Services, Inc. and DIRECTV, LLC, which are collectively referred to as the "Company" in the collective bargaining agreement between the employer and the Union, and will be referred to as the "Company" herein. The Company is an employer engaged in commerce within the meaning of 29 U.S.C. §185, and that does business in this judicial district. Plaintiff intends to serve Defendant by service of the summons and complaint upon Southwestern Bell Telephone Company through its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

### C.   Jurisdiction

4.   This court possesses jurisdiction over the subject matter of this action under 29 U.S.C. §185 as a suit to enforce a collective bargaining agreement between a union and an employer, under 28 U.S.C. §1331 as a federal question, and under 28 U.S.C. §1337 as a suit based on an Act of Congress regulating interstate commerce.

D.    Venue

5.    Venue is proper in this judicial district in that Defendant does business in and resides in this district within the meaning of 28 U.S.C. §1391 (b)(1) and in that a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this district within the meaning of 28 U.S.C. §1391 (b) (2).

E.    Material Facts

6.    The Union is the exclusive representative for the purposes of collective bargaining over wages, hours, and conditions of employment of a bargaining unit of employees of the Company.

7.    The Union and the Company are parties to a collective bargaining agreement. The collective bargaining relationship between the Union and the Company has existed for approximately seven decades and has produced a series of successive collective bargaining agreements spanning that range of time.

8.    The current collective bargaining agreement became effective on April 9, 2017 for an effective duration through April 10, 2021.

9.    The Company maintains a labor relations department located in Austin, Texas that administers the collective bargaining agreement and labor-management relationship with the Union on behalf of the Company.

10. The Union's District 6 is a geographically defined administrative unit of the Union, which administers the Union's collective bargaining relationships with various employers in the five states of Texas, Oklahoma, Arkansas, Missouri, and Kansas. The employee bargaining unit represented by the Union in dealings with the Company is a single bargaining unit comprised of employees in the five states of the Union's District 6, i.e. Texas, Oklahoma, Arkansas, Missouri, and Kansas. The headquarters office of CWA District 6 is located in Austin, Texas.

11. On December 12, 2017, a representative of the Company's labor relations department located in Austin notified an official of the CWA District 6 office located in Austin that 152 employees in the job title of Premises Technician, comprised of 50 Premises Technicians located in Austin and Bastrop, Texas; 25 Premises Technicians located in Brownsville, Edinburg, Harlingen, and McAllen, Texas; 40 Premises Technicians located in Kansas City, Missouri; and 37 Premises Technicians located in smaller groups in El Dorado, Arkansas, Lake Village, AR, Magnolia, AR, Monticello, AR, West Helena, AR, Wynne, AR, Emporia, Kansas, Caruthersville, Missouri, Dexter, MO, Eldon, MO, Fayette, MO, Joplin, MO, Kennett, MO, Mexico, MO, Perryville, MO, Poplar Bluff, MO, Saint Joseph, MO, Ada, Oklahoma, Altus, OK, Clinton, OK, Enid, OK, Lawton, OK, McAlester, OK, Pryor, OK, Shawnee, OK, and Victoria, Texas will be laid off from their employment for the alleged reason of "a reduction in workload". The designation of 50 employees for layoff in Austin/Bastrop, TX is the largest single group.

12. The last day on the payroll for these 152 affected Premises Technicians will be January 4, 2018. The Company notified the 152 affected employees of their imminent loss of employment on December 14, 2017, less than two weeks before the employees' Christmas holiday, a traditional and widely customary time of festivity and family gatherings. The Company's selection of the timing and schedule for this massive deprivation of employment was an extraordinary act of corporate cruelty.

13. The alleged reason given by the Company for this extensive layoff, "reduction in workload" is palpably false. There is no reduction in workload. The Company's business is booming and earning massive profits. The Company is subcontracting extensive amounts of work these 152 affected Premise Technicians are qualified and trained to perform. There is more than ample work opportunity for these 152 Premises Technicians in the vast amount of work being performed by subcontractors. For example, in the Dallas, Texas area alone approximately 1,000 or more subcontracted employees are daily performing the same kinds of work that Premises Technicians are trained and qualified to perform. For example, in the Austin, Texas area the Company is subcontracting approximately 80% or more of the kinds of work that Premises Technicians are trained and qualified to perform. These are examples only. The Company could easily offer 152 Premises Technicians opportunities to perform the work that subcontractors are performing, but refuses to do so.

14. Premises Technicians install television and Internet service, one of the most booming and growing types of work performed in any industry in the

United States. The Company, a major branch of AT&T, is suffering no business downturn in its television and Internet products, and in fact is one of the industry's top leaders in the television and Internet market.

15. The Company has never before laid off Premises Technicians for alleged lack of work.

16. After learning of this extensive layoff Claude Cummings, Jr., the CWA Vice President for District 6, who is the highest ranking CWA official for District 6, personally requested the Company to offer these affected Premises Technicians the opportunity to perform work they are qualified and trained to perform which is being performed by subcontractors. This reasonable request was denied. Cummings further requested the Company to delay the scheduled January 4, 2018 layoff date in order to provide the Company and the Union a reasonable opportunity to meet and discuss alternatives to layoff. This reasonable request was also denied. The Company refused to consider any alternatives, even though the alleged lack of work is a self-serving fabricated fiction.

17. A motivating factor for the Company's action is to reduce the bargaining unit represented by the Union and thus diminish the Union's bargaining strength.

18. The collective bargaining agreement between the Company and the Union contains a separate section known as the "Agreement of General Application". The Agreement of General Application contains Article VIII, Responsible Union-Company Relationship. This contractual article requires the

parties to deal with each other in good faith and respect. This article includes the following covenant of mutual good faith:

> "The Company and the Union recognize that it is in the best interests of both parties, the employees, and the public that all dealings between them continue to be characterized by mutual responsibility and respect. To ensure that this relationship continues and improves, the Company and the Union and their respective representatives at all levels will apply the terms of this Agreement fairly and in accord with its intent and meaning and consistent with the Union's status as exclusive bargaining representative of all employees in the Bargaining Unit."

18. By express contractual agreement, the terms and provisions of the Agreement of General Application are not subject to arbitration. Thus there is no meaningful contractual dispute resolution procedure available to the Union prior to instituting this lawsuit.

19. To institute this layoff of such unprecedented character, based on a false reason of reduction in workload while vast amounts of work the laid-off employees are trained and qualified to perform are being subcontracted, while refusing to allow opportunities for the affected employees to perform work that is being subcontracted, while refusing even to discuss possible alternatives with the Union, and while arbitrarily choosing the most festive and family-oriented holiday season of the year so as to cruelly cast the pall of loss of employment on employees at a time of family gatherings, motivated by a desire to diminish the Union's bargaining unit, constitutes a blatant act of bad faith and breach of the promise of respectful and fair dealings set forth in the parties' Agreement of General Application, Article VIII, Responsible Union-Company Relationship.

20. Premises Technicians are far from the only employees affected by massive reduction of the workforce. On December 12, 2017, representatives of the Company's labor relations department located in Austin also notified an official of the CWA District 6 office located in Austin that 561 positions in other job titles in various cities and towns in Texas, Oklahoma, Arkansas, Missouri and Kansas will be removed from the workforce on February 17, 2018. The Company notified the affected employees on December 14, 2017. In the majority of these notices the Company stated that reduction in workload was the reason for the action. In some notices the Company cited consolidation of work as the reason.

21. This reduction of a total of 713 employees at a time the Company's market is growing and earnings are booming is unprecedented in character and scope in the history of the collective bargaining relationship between the Union and the Company.

22. The Company is subcontracting vast amounts of the kinds of work represented in the 713 employees notified on December 14, 2017 of layoff and/or loss of position. To the extent the targeted employees perform clerical functions in support of employees who perform more skilled or technical functions, their job elimination is the result of the job elimination of the technical employees whom they support.

23. In light of the fact that the work 713 employees perform is being performed by subcontractors, the true reason is bad faith diminution of the bargaining unit.

24. To institute this layoff of such unprecedented character and scope, based on false reasons while vast amounts of work the laid-off employees are trained and qualified to perform are being subcontracted, while refusing to allow opportunities for the affected employees to perform work that is being subcontracted, while refusing even to consider possible alternatives, and while arbitrarily choosing the most festive and family-oriented holiday season of the year so as to cruelly cast the pall of loss of employment on employees at a time of family gatherings, motivated by a bad faith desire to diminish the Union's bargaining unit, constitutes a blatant act of bad faith and breach of the promise of respectful and fair dealings set forth in the parties' Agreement of General Application, Article VIII, Responsible Union-Company Relationship.

F. <u>Claims for Relief</u>

25. By breaching Article VIII of the Agreement of General Application as described herein, the Company violated and is in continuing violation of Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. §185, and the collective bargaining agreement.

26. Plaintiff CWA seeks and is entitled to specific enforcement of the collective bargaining agreement through a injunctive relief requiring the Company to reinstate to their former positions all employees laid off or otherwise removed from their positions, and requiring the Company to make whole all such employees for lost earnings, lost service credit, lost seniority, and lost benefits of every kind and character.

27. Plaintiff CWA seeks and is entitled to declaratory judgment, declaring the Union's rights under Article VIII of the Agreement of General Application and declaring that the complained of actions of the Company breached the agreement as complained of.

### G.   Jury Demand

Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff Communications Workers of America demands trial by jury on all issues so triable.

### H.   Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff CWA prays that Defendant Southwestern Bell Telephone Company, AT&T Services Inc., and DIRECTV LLC duly appear and answer this complaint, and that upon trial of this cause the Court award judgment to Plaintiff granting relief as specified in paragraphs 26 and 27 above, together with costs as provided by law.

Respectfully submitted,

/s/ *David Van Os*
David Van Os
Texas Bar No. 20450700
Email: dvo@vanoslaw.com
DAVID VAN OS & ASSOCIATES, P.C.
8626 Tesoro Drive, Suite 510
San Antonio, TX 78217
Tel. (210) 824-2653
Fax (210) 824-3333