IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO | § § § | |
| V. | § § | A-17-CV-1221 LY |
| SOUTHWESTERN BELL TELEPHONE COMPANY, et al. | § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Joint Motion to Dismiss, Motion for Judgment on Pleadings, or Alternative Motion to Compel Arbitration (Dkt. No. 7); Plaintiff's Response (Dkt. No. 11); and Defendants' Reply Brief (Dkt. No. 14). On March 8, 2018, the District Court referred the motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72, and Rule 1(d) of Appendix C of the Local Court Rules.

## I. GENERAL BACKGROUND

Communications Workers of America, AFL-CIO ("the Union") and Southwestern Bell Telephone Company, AT&T Services, Inc., and DIRECTTV, LLC ("Defendants") have had a decades-long bargaining relationship and are parties to a collective bargaining agreement ("CBA"), the current version of which is in effect through April 10, 2021. On December 12, 2017, a representative of Defendants notified an official of the Union that 713 employees would be laid off from their employment in January and February 2018, for the alleged reason of a "reduction in workload." The Union contends that the Defendants denied its request to delay the scheduled layoff in order to provide the parties an opportunity to meet and discuss alternatives to the layoff. The

Union contends that the Defendants' alleged reason for the layoff is false because there was no reduction in workload. The Union alleges that at the same time Defendants laid off these employees, they hired subcontractors to perform the work the laid off employees were qualified and trained to perform. The Union further contends that a motivating factor for the massive layoff was to reduce the bargaining unit represented by the Union and thus diminish the Union's bargaining strength.

On December 30, 2017, the Union filed this lawsuit against Defendants under the Labor-Management Relations Act of 1947, 29 U.S.C. § 185. The Union alleges that the Defendants' actions have violated "the promise of respectful and fair dealings" set forth in the parties' CBA. The Union seeks specific enforcement of the CBA through injunctive relief requiring Defendants to reinstate all employees laid off to their former positions and award those employees lost earnings, service credit, seniority and benefits. In addition, the Union seeks a declaratory judgment that Defendants's actions breached the CBA.

Defendants move to dismiss the case, arguing that the grievance process and arbitration clause contained in the CBA apply to the claims asserted in this lawsuit, and this Court does not have jurisdiction over the case because the Union failed to exhaust the grievance/arbitration process contained in the CBA before filing suit. The Court agrees.

## II. STANDARD OF REVIEW

A district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration. *Gilbert v. Donahoe*, 751 F.3d 303, 306–07 (5th Cir.), *cert. denied*, 135 S.Ct. 251 (2014). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781(5th Cir. 2012). The plaintiff must prove by a

preponderance of the evidence that the court has jurisdiction based on the complaint and evidence. *Id.* A court can find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.*

### III. ANALYSIS

Defendants argue that the CBA's grievance process and arbitration clause apply to the claims in this case and that the Court therefore does not have jurisdiction over the suit because the Union failed to exhaust the CBA process. The Union disagrees and argues that Defendants' actions violated the "covenant of mutual good faith" contained in the CBA's Agreement of General Application and contends *that* section of the CBA is not subject to the arbitration clause.

**A.     Arbitration Clauses and CBA's**

It is firmly established that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Technologies., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). "Doubts should be resolved in favor of coverage." *Id.* "This presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, 'furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.'" *Id.* at 650 (quoting *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371-372 (1984)).

In addition, "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* at 649. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* "The courts' role is very limited when deciding issues of arbitrability." *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 343 (5th Cir. 1987). "The court's function is to decide whether the claim asserted is the type of claim the parties have agreed to arbitrate." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Ref. & Supply Co.*, 449 F.3d 616, 619–20 (5th Cir. 2006). "In no way are the courts to consider the merits of a claim." *Id.* "Rather, the court 'is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.'" *Id.* (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)).

**B.     The Parties' CBA**

The CBA here is made up of two documents, the Departmental Agreement, and the Agreement of General Application. It does not appear to be disputed that disagreements regarding matters addressed in the Departmental Agreement are subject to the grievance and arbitration clauses. Specifically, Article XIX of the Departmental Agreement sets out the grievance procedure the Union must follow in presenting to and discussing employee grievances with the Defendants. Dkt. No. 7-5. If after following all of the grievance procedures provided there, the Parties still cannot resolve their dispute, then the matter must be submitted to arbitration as provided by the arbitration clause contained in Article IV of the Agreement of General Application. Dkt. No. 7-6.

As noted, the focus of this dispute is the lay off of over 700 employees, and the Defendants' alleged plan to replace those employees with contractors. Lay offs, force reductions, and contracting for employees are all topics addressed in the Departmental Agreement.[1] The Union does not dispute this. Nor does it dispute that the Arbitration Clause is mandatory and that any grievances regarding matters covered in the Departmental Agreement are subject to the grievance and arbitration clauses. But instead of following the grievance/arbitration procedures in the CBA, the Union filed this lawsuit, arguing that the Court has jurisdiction to review this case because it is brought under the Responsible Union-Company Relationship clause contained in Article VIII of the CBA. That clause provides, in relevant part:

> The Company and the Union recognize that it is in the best interests of both parties, the employees, and the public that all dealings between them continue to be characterized by mutual responsibility and respect. To ensure that this relationship continues and improves, the Company and the Union and their respective representatives at all levels will apply the terms of this Agreement fairly and in accord with its intent and meaning and consistent with the Union's status as exclusive bargaining representative of all employees in the Bargaining Unit.

Dkt. No. 11-4. The Union contends that this "covenant of mutual good faith" is a provision of the Agreement and is not subject to arbitration.

It is unclear what substantive rights this provision provides to the parties to the CBA. Nevertheless, the Union's attempt to avoid arbitration by portraying this action as one based on Article VIII is not persuasive. This lawsuit is clearly and unambiguously challenging the Defendants' decision to lay off employees and replace those workers with subcontractors, all of

---

[1] Employee force reductions, surpluses and layoffs are addressed in Art. XVII of the Departmental Agreement, and in Appendix J, Supp. Stmt. 12. And use of contractors is addressed in Art. XXV, Contract Work, and in Appendix J, Supp. Stmt. 13. Dkt. Nos. 7-2 to 7-4.

5

which are matters expressly addressed in the Departmental Agreement. For example, the "Introduction" portion of the complaint alleges:

> This is an action brought by a labor union . . . against an employer *over the employer instituting an unprecedented massive layoff of employees represented by the union while at the same time massively subcontracting work that the employees are trained and qualified to perform, for the bad faith purpose of diminishing the employee bargaining unit for which the union serves as exclusive representative* in willful, bad faith breach of a contractual promise to deal with the union with respect, fairness, and good faith.

Dkt. No. 1 ("Complaint") at ¶ 1 (emphasis added). Similarly, the Complaint further alleges:

> This reduction of a total of 713 employees at a time the Company's market is growing and earnings are booming is unprecedented in character and scope in the history of the collective bargaining relationship between the Union and the Company.
>
> The Company is subcontracting vast amounts of the kinds of work represented in the 713 employees notified on December 14, 2017 of layoff and/or loss of position. To the extent the targeted employees perform clerical functions in support of employees who perform more skilled or technical functions, their job elimination is the result of the job elimination of the technical employees whom they support.
>
> In light of the fact that the work 713 employees perform is being performed by subcontractors, the true reason is bad faith diminution of the bargaining unit.

*Id.* at ¶ 21-23. The "Claims for Relief" stated in the Complaint also reveal the nature of this lawsuit:

> Plaintiff CWA seeks and is entitled to specific enforcement of the collective bargaining agreement through a [sic] injunctive relief requiring the Company to reinstate to their former positions all employees laid off or otherwise removed from their positions, and requiring the Company to make whole all such employees for lost earnings, lost service credit, lost seniority, and lost benefits of every kind and character.
>
> Plaintiff CWA seeks and is entitled to declaratory judgment, declaring the Union's rights under Article VIII of the Agreement of General Application and declaring that the complained of actions of the Company breached the agreement as complained of.

*Id.* at ¶ 26-27. The requested relief could not be granted without finding that the Defendants' violated the CBA provisions governing layoffs and subcontracting, which requires interpreting these

provisions.  But "the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 594, 599 (1960).

The Union's reliance on Article VIII is unavailing.  A plaintiff "may not use artful pleading to avoid arbitration." *Artesia Springs, LLC v. DS Waters of Am., Inc.*, 2015 WL 12712643, at *4 (W.D. Tex. Jan. 13, 2015) (quoting *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 630 (4th Cir. 2006)). *See also*, *Commc'ns Workers of Am., AFL-CIO v. Tyco Power Sys. Inc.*, 99 F. App'x 499, 503 (5th Cir. 2004) (in a case "in which an otherwise clearly arbitrable violation occurs in connection with a non-arbitrable event, the policy in favor of arbitration might prevail and require the court to compel arbitration of the dispute."); *Brazzel v. Arceneaux*, 2012 WL 13054501, at *2 (W.D. La. Apr. 18, 2012) ("Plaintiff's attempt to avoid arbitration by portraying this action as one for dissolution pursuant to La. R.S. 12:1335 (and not involving a dispute relating to the Agreements) is not persuasive.").[2]

As the Supreme Court has stated, "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies*, 475 U.S. at 650.  This lawsuit was clearly filed to challenge employee layoffs and AT&T's use of subcontractors to replace

---

[2]The Union objects to the Defendants' reliance on unpublished Fifth Circuit opinions. Though unpublished opinions on or after January 1, 1996 are not precedent, they "may be cited as persuasive authority pursuant to Fed. R. App. P. 32.1(a)." *United States v. Alvarez*, 880 F.3d 236, 240 (5th Cir. 2018); *see also* Fifth Circuit Rule 47.5.4

those employees, and the claims asserted in this lawsuit are the type of claims the parties agreed to arbitrate. *Paper, Allied-Indus.*, 449 F.3d at 619-20. The Union has failed to meet its burden to prove that the instant dispute falls outside the scope of the CBA. Accordingly, the Union must pursue the grievance/arbitration procedures outlined in the CBA with the arbitrator and not in the courts.

C.      **Failure to Exhaust**

Because the Union has failed to pursue the grievance/arbitration procedures outlined in the CBA, this Court does not have jurisdiction over this lawsuit. "Federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). The "grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "Outside of limited circumstances, the failure to 'fully exhaust[ ]' contracted for 'grievance procedures' places an employee's claim for breach of a collective bargaining agreement beyond 'judicial review.'" *NFL Players' Ass'n v. NFL*, 874 F.3d 222, 226 (5th Cir. 2017) (citing *Vaca v. Sipes*, 386 U.S. 171, 184-85 (1967)). "While courts have jurisdiction to enforce collective bargaining contracts, 'where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute.'" *Id.* (quoting *Misco*, 484 U.S. at 37). "Our circuit holds that federal courts lack subject matter jurisdiction 'to decide cases alleging violations of a collective bargaining agreement . . . by an employee against his employer unless the employee has exhausted contractual procedures for redress.'" *Id.* (quoting

*Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 402 (5th Cir. 2000)). Because this Court does not have jurisdiction over this lawsuit, it must be dismissed.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Joint Motion to Dismiss (Dkt. No. 7), and dismiss this case for lack of jurisdiction.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 12th day of June, 2018.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

9